UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONALD RAGLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 15 C 173 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| THE SHERIFF OF COOK COUNTY | ) |
| THOMAS J. DART, COOK COUNTY | ) |
| CORRECTIONAL OFFICER BAILEY, and | ) |
| the COUNTY OF COOK, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff Donald Ragland, formerly a pretrial detainee at the Cook County Jail (the "Jail"), filed suit against the Sheriff of Cook County Thomas J. Dart ("Dart") in his official capacity only, Cook County Correctional Officer Bailey, and the County of Cook ("Cook County").[1] Ragland, who has a permanent trachea, complains that Dart and Cook County acted with deliberate indifference to his medical needs while he was at the Jail. Ragland also brings state law claims for intentional infliction of emotional distress ("IIED"), negligence, and indemnification.[2] Dart and Cook County have moved to dismiss Ragland's first amended complaint. Because Ragland has not adequately alleged a *Monell* claim against Dart or Cook County, Ragland's § 1983 claim is dismissed without prejudice. As this is the only basis

---

[1] Although Bailey is named as a defendant in the caption and preamble of the first amended complaint, none of Ragland's claims are specifically directed at Bailey. The docket indicates that summons issued to Bailey, although there is no return of service on the docket and no appearance has been filed on his behalf.

[2] The IIED and negligence claims could be read to include Bailey, as the allegations concerning these claims discuss Bailey's actions. But at the conclusion of each of these counts, Ragland does not request that judgment be entered against Bailey for either IIED or negligence. Thus, it is unclear whether Ragland intended to name Bailey as a defendant.

Ragland has asserted for the Court's subject matter jurisdiction, Ragland must file a second amended complaint to remain in federal court. In filing an amended complaint, Ragland should also amend his IIED claim, as his currently pleaded IIED claim fails to sufficiently set forth a basis to hold Dart Cook County directly liable for the alleged extreme and outrageous conduct. Finally, the Court does not reach Dart and Cook County's immunity arguments because they are not sufficiently presented and are affirmative defenses more appropriately considered at a later stage.

## BACKGROUND[3]

Ragland, a pretrial detainee at the Jail from April 18 through December 4, 2014, was housed in a Residential Therapy Unit of Division 8-3W. Division 8-3W is a part of Cermak Health Services ("Cermak") and intended for those detainees requiring medical, surgical, or psychological care. Ragland was placed in Division 8-3W because of his permanent trachea. On June 2, 2014, Ragland complained to Dr. Andrew Defuniak, a doctor employed by Cermak who worked at the Jail, that he was experiencing pain and discomfort with his permanent trachea and that its opening was drying out and closing. Dr. Defuniak prescribed a humidifier for Ragland. But Cook County Sheriff's Office employees did not provide Ragland with a humidifier, even though he had a prescription and filed a formal grievance requesting the humidifier on June 7.

Later that year, on November 23, Ragland was conducting routine maintenance on his tracheotomy tube when it began to bleed uncontrollably. Ragland had to be transported to the Cook County Stroger Hospital for emergency surgery to reopen the tracheotomy tube opening. About a week later, on December 1, 2014, Division 8-3W was painted. In order for Ragland's

---

[3] The facts in the background section are taken from Ragland's first amended complaint and are presumed true for the purpose of resolving Dart and Cook County's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

cell to be painted, Correctional Officer Bailey ordered Ragland to leave his cell. Painters wearing masks to protect themselves from inhaling the paint fumes then painted Ragland's cell. About an hour later, Bailey ordered Ragland back to his cell. Shortly thereafter, Ragland began having difficulty breathing through his trachea and experienced nausea, shortness of breath, dizziness, and lightheadedness. He also vomited. Although Ragland complained to Cook County correctional officers, including Bailey, they ignored his complaints. When he was still experiencing these issues the following day, Nurse Perez, a Cermak employee, informed Dr. Defuniak of Ragland's medical condition. Dr. Defuniak determined that Ragland's symptoms were caused by the paint fumes and provided Ragland with intravenous fluids and nausea medication. But when Dr. Defuniak released Ragland approximately two hours later, Cook County Sheriff's Office employees placed him in the same freshly painted cell. Ragland remained there until he was transferred to Stateville Correctional Center on December 4, 2014.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

**I.  Section 1983 Claim (Count I)**

Dart and Cook County move to dismiss Ragland's § 1983 claim against them, arguing that Ragland has failed to properly allege a viable *Monell* claim. Ragland may hold Cook County and Dart in his official capacity liable under § 1983 when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Liability may be based on (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policy making authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000).

Ragland alleges that Dart and Cook County acted with deliberate indifference to his serious medical needs pursuant to an official policy, custom, or practice sanctioned by an individual with final policy making authority.[4] Doc. 11 ¶ 46. According to Ragland's response to the motion to dismiss, he is challenging three policies or practices: (1) the failure to maintain a grievance system or other procedure to address medical needs in a timely fashion, (2) the failure to provide restorative care, and (3) the creation of an atmosphere in which corrections officers

---

[4] Ragland does not identify Dart as the individual with final policy making authority. Nor does Ragland argue in his response to the motion to dismiss that his *Monell* claim should proceed under the third avenue of *Monell* liability because his injuries were caused by Dart, who has final policy making authority. Because Ragland does not appear to be pursuing this avenue, the Court will not address it further.

and medical personnel are encouraged to disregard serious medical needs. Doc. 18 at 7. As Ragland does not allege that any of these were express policies, the Court proceeds to analyze Ragland's claim under the second avenue of establishing *Monell* liability. To allege a widespread practice, Ragland must allege that the relevant official (here, Dart) was "'deliberately indifferent as to [the] known or obvious consequences'" of the alleged practice, i.e. that Dart was "aware of the risk created by the custom or practice and . . . failed to take appropriate steps to protect the plaintiff." *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009) (alteration in original) (quoting *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002)). Ragland must also allege that the policy or custom was the "moving force" behind the constitutional deprivation. *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007).

Although *Monell* claims may proceed with conclusory allegations of a policy or practice, some facts must be pleaded to put the defendant on notice of the alleged wrongdoing. *Armour v. Country Club Hills*, No. 11 C 5029, 2014 WL 63850, at *6 (N.D. Ill. Jan. 8, 2014) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011), and *Riley v. County of Cook*, 682 F. Supp. 2d 856, 861 (N.D. Ill. 2010)). Here, Ragland's allegations of Cook County's and the Sheriff's Office's policy or practice are vague and broad, lacking in sufficient detail to put Dart and Cook County on notice of the claim against them. *See Mikolon v. City of Chicago*, No. 14 C 1852, 2014 WL 7005257, at *4–5 (N.D. Ill. Dec. 11, 2014) (dismissing *Monell* claims that contained "only boilerplate conclusions, not well-pleaded facts," noting that the claim "approaches too closely a claim that seeks to hold the City responsible for all official actions of its employees"). Nor has Ragland alleged sufficient facts to suggest that the conditions would have come to Dart's attention. *See Torres v. Dart*, No. 14 C 6258, 2015 WL 4379890, at *4

5

(N.D. Ill. July 16, 2015) (allegations must demonstrate that incidents would have come to attention of policymakers).  Although in his response Ragland cites to the Department of Justice's 2008 report involving medical care, which may involve such information, the wide-ranging reference to the document, without specific references to the policies and practices alleged in this case, is not sufficient to support Ragland's claim.  *See Harper v. Dart*, No. 14 C 01237, 2015 WL 6407577, at *3 (N.D. Ill. Oct. 21, 2015) (although "it might have been appropriate for [plaintiff] to rely on specific factual allegations in the Justice Department complaint," because plaintiff did not bring specific allegations to the court's attention, the court would not rely on the Justice Department's complaint or sift through it on its own to find support for plaintiff's attempted *Monell* claim).

Moreover, a plaintiff pursing a widespread policy or practice claim generally must allege more than one or even three instances of misconduct.  *Thomas*, 604 F.3d at 303 (declining to adopt a "bright-line rule[ ]" but indicating that there must be "more than one instance, or even three" of wrongdoing (citation omitted) (internal quotation marks omitted)); *Armour*, 2014 WL 63850, at *6 ("[A] single isolated incident of wrongdoing by a nonpolicymaker is generally insufficient to establish municipal acquiescence in unconstitutional conduct." (citation omitted)). This requirement is intended to "demonstrate that there is a policy at issue rather than a random event." *Thomas*, 604 F.3d at 303.  Here, however, Ragland does not allege that any other detainee suffered from similar issues, admitting that he has only alleged repeated violations of his constitutional rights.  But even the repeated violations Ragland alleges are not enough, as he only identifies one instance in which his grievance was ignored while at the Jail (the other instance mentioned in his complaint occurred after he was transferred to Stateville Correctional Center and thus cannot form the basis of a Cook County or Sheriff's Office policy or practice)

6

and three instances of his medical needs being ignored. *See Thomas*, 604 F.3d at 303 (three alleged instances of wrongdoing not enough); *cf. Pickett v. Dart*, 13 C 1205, 2014 WL 919673, at *4 (N.D. Ill. Mar. 10, 2014) (allowing *Monell* claim to proceed against Cook County and Dart where plaintiff alleged three instances *other* than his own where detainees received inadequate treatment while incarcerated at the Jail and alleged deficiencies in responding to grievances submitted by other inmates). Thus, his § 1983 *Monell* claim fails and is dismissed without prejudice.[5]

## II.   IIED Claim (Count II)

Under Illinois law, to establish a claim for IIED, Ragland must allege that "(1) defendants' conduct was extreme and outrageous; (2) defendants either intended to inflict severe emotional distress or knew that there was a high probability that its conduct would do so; and (3) defendants' conduct actually caused severe emotional distress." *Lifton v. Bd. of Educ. of City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005) (quoting *Thomas v. Fuerst*, 803 N.E.2d 619, 625, 345 Ill. App. 3d 929, 281 Ill. Dec. 215 (2004)). To be considered extreme and outrageous conduct, the conduct "must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 438 (7th Cir. 2009) (quoting *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211, 154 Ill. 2d 1, 180 Ill. Dec. 307 (1992)).

Ragland purports to bring his IIED claim only against Dart (in his official capacity) and Cook County, although he also includes allegations against Bailey in the body of the claim. He

---

[5] The Court is dismissing the only claim on which its jurisdiction is founded, which would warrant relinquishing supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). But because the § 1983 claim is dismissed without prejudice and the Court is providing Ragland with leave to replead, the Court will address the issues raised by Cook County and Dart with respect to the state law claims as well. Cook County and Dart only challenge the IIED and negligence claims, and so the Court will not address the indemnification claim.

7

contends that the correctional officers, Dart, and Cook County acted in an extreme and outrageous fashion when they ignored his requests for help while he was suffering from paint fume inhalation and when they placed him back in the freshly painted cell after he received emergency medical treatment for that inhalation. Ragland's complaint only includes boilerplate allegations, however, connecting Dart and Cook County to the alleged extreme and outrageous conduct. He also does not explain, in his complaint or response to the motion to dismiss, how Dart in his official capacity or Cook County can be held directly liable for these actions when they did not have any direct contact with Ragland. *See Hardy v. Hardy*, No. 10 C 5921, 2013 WL 5325077, at \*7 (N.D. Ill. Sept. 20, 2013) (IIED claim did not lie against doctor in charge of medical care for inmates where doctor was not directly monitoring plaintiff on a daily basis). On these allegations, the Court cannot allow Ragland to proceed on a direct claim against Dart or Cook County.

Instead, Ragland's claim appears to be more properly directed at Bailey and other unidentified officers, who directly interacted with Ragland, placing him in the cell after it was painted even though he had recently had emergency surgery to repair his permanent trachea and thereafter ignoring his persistent requests for medical attention. *See Cobige v. City of Chicago*, 752 F. Supp. 2d 860, 871 (N.D. Ill. 2010) (officers with complete authority over detainee who were on notice of detainee's pain could be found to have acted in an extreme and outrageous fashion), *aff'd in part*, 651 F.3d 780 (7th Cir. 2011). Ragland may be seeking to hold Cook County and Dart liable on a *respondeat superior* theory of liability for these officers' actions. But because the claim as currently pleaded seeks to impose direct liability on Dart and Cook County, the Court dismisses the IIED claim without prejudice, providing Ragland with the opportunity to clarify the IIED claim in a second amended complaint.

8

**III.     Negligence Claim (Count III)**

Dart and Cook County also argue that certain immunities provided by the Illinois Tort Immunity Act, 745 Ill. Comp. Stat. 10/1-101 *et seq.*, shield them from Ragland's negligence claim.  They provide a laundry list of sections from the Tort Immunity Act that allegedly provide immunity but do not elaborate as to why these sections prevent Ragland from pursuing his negligence claim against them.  The Court need not address each section at this point, however, because Dart and Cook County have not properly set forth why these sections apply and the Court will not construct their arguments for them.  *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) (the court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel").  The Court is particularly hesitant to engage in such an analysis based on Dart and Cook County's current briefing because immunity is an affirmative defense that need not be anticipated in the complaint and on which Dart and Cook County bear the burden of proof.  *See Smith v. City of Chicago*, --- F. Supp. 3d ----, 2015 WL 6859299, at *10 (N.D. Ill. Nov. 9, 2015); *Frederickson v. Landeros*, No. 11 C 3484, 2015 WL 6601317, at *1 (N.D. Ill. Oct. 29, 2015).  Because the Court cannot say with certainty that Ragland has pleaded himself out of court merely by looking at the sections recited by Dart and Cook County, the Court defers consideration of the applicability of the Tort Immunity Act to Ragland's negligence claim.

**CONCLUSION**

For the foregoing reasons, Defendants Dart and Cook County's motion to dismiss [14] is granted in part and denied in part. The section 1983 claim (Count I) and IIED claim (Count II) are dismissed without prejudice against Dart and Cook County. Because the Court has dismissed the only federal claim upon which its subject matter jurisdiction is based, the Court gives Ragland until March 11, 2016 to file a second amended complaint asserting a basis for federal subject matter jurisdiction. The Court strikes the status date set for February 11, 2016 and resets it to March 17, 2016 at 1:30 p.m.

Dated: February 10, 2016

SARA L. ELLIS
United States District Judge